998 F.2d 68
 1993 A.M.C. 2906, 62 USLW 2017, 26
Fed.R.Serv.3d 33
 The GOVERNMENT OF the UNITED KINGDOM OF GREAT BRITAIN and
Northern Ireland, Acting Through the UNITED
KINGDOM DEFENSE PROCUREMENT OFFICE,
MINISTRY OF DEFENSE,
Petitioners-Appellees,
v.
The BOEING COMPANY, Boeing Defense & Space Group,
Helicopters Division, formerly known as Boeing
Vertol Company, Respondents-Appellants,
Textron, Inc., Respondent.
 No. 1028, Docket 92-9242.
 United States Court of Appeals,
Second Circuit.
 Argued March 25, 1993.
Decided June 29, 1993.
 
 George F. Hritz, New York City (Davis, Scott, Weber & Edwards, New York City, Steven S. Bell, Perkins Coie, Seattle, WA, of counsel), for respondents-appellants.
 Peter Buscemi, Washington, DC (Markham Ball, Laurie B. Adams, Morgan, Lewis & Bockius, Washington, DC, of counsel), for petitioners-appellees.
 Before: MESKILL, Chief Judge, PRATT, Circuit Judge and RESTANI, Judge.*
 MESKILL, Chief Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Southern District of New York, Stanton, J., granting the motion of petitioner-appellee Government of the United Kingdom, Ministry of Defense (United Kingdom), to consolidate an American Arbitration Association (AAA) arbitration proceeding between the United Kingdom and respondent-appellant The Boeing Company (Boeing) with a separate AAA arbitration proceeding between the United Kingdom and respondent Textron, Inc. (Textron). The district court held that it has the authority pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), and the Federal Rules of Civil Procedure to compel consolidation of separate arbitration proceedings when the proceedings involve the same questions of fact and law, even in the absence of the parties' consent to consolidation.
 
 
 2
 We hold that a district court cannot order consolidation of arbitration proceedings arising from separate agreements to arbitrate absent the parties' agreement to allow such consolidation. Therefore, we reverse the district court.
 
 BACKGROUND
 
 3
 This case, filed under seal, arises from a January 1989 ground testing incident in which a military helicopter owned by the United Kingdom was damaged. The incident occurred during Boeing's testing of a new electronic fuel control system (FADEC) that had been designed by Textron and installed in the helicopter by Boeing. The helicopter had been manufactured by Boeing and its engine had been manufactured by Textron.
 
 
 4
 Boeing and Textron have separate contracts with the United Kingdom governing long-standing relationships that each company has with the United Kingdom on a variety of military projects. The relevant arbitration agreement between the United Kingdom and Boeing is contained in a 1981 base contract for certain services. The relevant arbitration agreement between the United Kingdom and Textron is contained in a 1985 contract relating specifically to the design and development of FADEC. The contracts contain identical arbitration clauses which read:
 
 
 5
 Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in New York City by three Arbitrators in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
 
 
 6
 Boeing and Textron also are parties to a separate Interface Agreement between them which defines their respective responsibilities for the FADEC project.
 
 
 7
 On July 18, 1991, the United Kingdom filed Demands for Arbitration with the AAA against Boeing and Textron for its losses resulting from the January 1989 ground testing incident. Both before and after filing the Demands for Arbitration, the United Kingdom requested that Boeing and Textron consent to consolidation of the arbitration proceedings. Boeing refused, alleging that consolidation would lead to undue expense and effort on its behalf because of the alleged simplicity of the issues involved in its arbitration with the United Kingdom compared to those in the United Kingdom/Textron arbitration. The AAA informed the United Kingdom that it would not order consolidation of arbitration proceedings without the consent of all parties.
 
 
 8
 On October 1, 1991, the United Kingdom filed a Petition to Compel Consolidated Arbitration in the United States District Court for the Southern District of New York. All parties agreed that both arbitrations would be stayed pending disposition of the United Kingdom's petition. On October 14, 1992, Judge Stanton issued a Memorandum Endorsement in which he granted the United Kingdom's Petition to Compel Consolidated Arbitration and denied Boeing's Motion to Dismiss. Judgment was entered on October 22, 1992 and this appeal followed. Judge Stanton entered an order staying his judgment pending the outcome of this appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.
 
 DISCUSSION
 
 9
 * The United Kingdom urges, and the district court held, that our decision in Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966 (2d Cir.1975), cert. denied, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) (Nereus ), definitively established in this Circuit the district courts' authority pursuant to the FAA and the Federal Rules of Civil Procedure to consolidate arbitration proceedings that turn on the same questions of fact and law. As we describe in greater detail below, the facts in Nereus were much different than the facts in this case, and the district court erred in applying the Nereus holding.
 
 
 10
 In Nereus, a maritime contract of affreightment, or Charter Party, was signed by Nereus, as owner, and Hideca, as charterer. The Charter Party contained a detailed arbitration clause somewhat similar to the one contained in the United Kingdom contracts. Five months later, Addendum No. 2 to the Charter Party was signed by Nereus, Hideca and Cepsa, as guarantor. The addendum provided that "should HIDECA default in payment or performance of its obligations under the Charter Party, [Cepsa] will perform the balance of the contract and assume the rights and obligations of HIDECA on the same terms and conditions as contained in the Charter Party." Nereus, 527 F.2d at 969-70. Later, when the Arab oil embargo occurred, complications developed causing Nereus to give notice to Cepsa that it felt Hideca was in default and asking Cepsa to perform the balance of the Charter Party. A month later Nereus demanded arbitration with Hideca and Hideca consented. Several weeks after that, Nereus demanded arbitration with Cepsa. Cepsa, however, rejected the demand, claiming that it had not agreed to arbitrate.
 
 
 11
 Cepsa filed suit in the district court seeking a declaratory judgment that it had not agreed to arbitrate disputes. The district court disagreed with Cepsa and held that Cepsa had consented to arbitrate disputes in signing Addendum No. 2, which the court held incorporated the arbitration clause of the Charter Party. Several months later Hideca filed suit seeking to restrain the Cepsa/Nereus arbitration until after the conclusion of the Hideca/Nereus arbitration. In this second action, one of the parties requested consolidation of the two arbitrations and the district court granted the request to compel consolidation.
 
 
 12
 On appeal, we affirmed the district court's order compelling consolidation and reformed the arbitration provision from which both arbitrations arose to provide for five arbitrators instead of three, one to be selected by each of the three parties and the remaining two arbitrators to be selected by the three arbitrators already selected. Id. at 975. We held that a guarantor can be bound by an arbitration clause contained in the original contract when broad and inclusive guarantee language is employed, such as the language of Addendum No. 2. Id. at 973-74; see also Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 48 (2d Cir.1993) (explaining our holding in Nereus ).
 
 
 13
 Nereus is distinguishable from the case before us. In Nereus, all three parties signed Addendum No. 2, which incorporated the provisions of the Charter Party, including the arbitration provision. We held that in signing the addendum, Cepsa had agreed to "assume the rights and obligations" of Hideca, including the obligation to participate in arbitration over any disputes. Nereus, 527 F.2d at 973-74. Thus all three parties were in arbitration pursuant to a single arbitration agreement. We determined that the intention of the signatories to Addendum No. 2 would be most closely adhered to with a single arbitration proceeding. In contrast, in the case before us, Boeing and Textron are in arbitration with the United Kingdom pursuant to two distinct agreements to arbitrate contained in two distinct contracts. Neither agreement contains any provision for consolidation. Boeing never agreed to participate in arbitration with Textron, and vice versa. We simply have no grounds to conclude that the parties consented to consolidated arbitration. The district court is without authority to consolidate the two actions based upon the mere fact that the disputes contain similar or identical issues of fact and law. See Volt Info. Sciences v. Board of Trustees, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) ("[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.").II
 
 
 14
 As the district court and the United Kingdom point out, in our holding in Nereus we also relied on the Federal Rules of Civil Procedure and the "liberal purposes" of the FAA. We stated that
 
 
 15
 Fed.R.Civ.P., Rules 42(a) and 81(a)(3), are applicable. Moreover, we think the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us.
 
 
 16
 527 F.2d at 975 (footnote omitted). Subsequent to our decision in Nereus, several district courts in this Circuit have determined that they have the authority to compel consolidated arbitration in cases involving separate agreements to arbitrate but similar or identical factual circumstances and questions of law.[1] However, as we explain below, recent Supreme Court case law has undermined our previous conclusion that the FAA's "liberal purposes" and the Federal Rules of Civil Procedure allow us to consolidate arbitration proceedings absent consent. To the extent that Nereus relied on that conclusion it is no longer good law.
 
 
 17
 * The United Kingdom brought this federal action under the FAA, 9 U.S.C. § 1 et seq., asserting that the district court has authority to compel consolidation pursuant to the FAA and the Federal Rules of Civil Procedure, Rules 42(a) and 81(a)(3). The relevant section of the FAA provides, in pertinent part:
 
 
 18
 A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
 
 
 19
 9 U.S.C. § 4. Boeing takes the position that the district court did not have the authority under the FAA to compel consolidation because (1) the United Kingdom cannot seek relief as an "aggrieved" party because none of the parties has refused to arbitrate, and (2) given the court's narrowly circumscribed role in private arbitrations merely to "direct[ ] the parties to proceed to arbitration in accordance with the terms of the agreement," the district court is without authority to direct consolidation when consolidation is not provided for in the agreements. We need not decide whether the United Kingdom is properly deemed a "party aggrieved" under section 4 of the FAA because we now hold that the FAA does not authorize consolidation of arbitration proceedings unless doing so would be "in accordance with the terms of the agreement." 9 U.S.C. § 4.
 
 
 20
 In Nereus, we found authority to consolidate arbitration proceedings in "the liberal purposes of the Federal Arbitration Act," 527 F.2d at 975, and we based our finding on our prior decision in Robert Lawrence Co. v. Devonshire Fabrics, 271 F.2d 402 (2d Cir.1959), cert. dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). We stated in Robert Lawrence that
 
 
 21
 any doubts as to the construction of the [FAA] ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars. Such policy has been consistently reiterated by the federal courts and we think it deserves to be heartily endorsed.
 
 
 22
 271 F.2d at 410 (citations omitted). Cases decided in the Supreme Court since our decisions in Robert Lawrence and Nereus have undermined our interpretation of the purposes of the FAA. See Volt Info. Sciences, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488; Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These cases concluded that the FAA was intended merely to assure the enforcement of privately negotiated arbitration agreements, despite possible inefficiencies created by such enforcement.
 
 
 23
 The Supreme Court affirmed an order requiring enforcement of an arbitration agreement in Moses H. Cone Memorial Hosp., even though arbitration would result in bifurcated proceedings because not all of the parties to the dispute were parties to the arbitration agreement. In words quite relevant to the case at hand, the Supreme Court stated that "[u]nder the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." 460 U.S. at 20, 103 S.Ct. at 939. Subsequently in Byrd, the Supreme Court explained in detail the limited purposes behind the FAA:
 
 
 24
 The legislative history of the [FAA] establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims. The [FAA], after all, does not mandate the arbitration of all claims, but merely the enforcement--upon the motion of one of the parties--of privately negotiated arbitration agreements. The House Report accompanying the [FAA] makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.
 
 
 25
 ....
 
 
 26
 The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.
 
 
 27
 470 U.S. at 219-21, 105 S.Ct. at 1241-43 (footnote omitted). Four years later the Supreme Court reemphasized its position by stating that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Sciences, 489 U.S. at 478, 109 S.Ct. at 1255.
 
 
 28
 Each of our sister circuit courts that has considered the question since these Supreme Court decisions has held that district courts do not have the authority under the FAA to consolidate arbitrations absent the parties' consent.[2] In Weyerhauser Co. v. Western Seas Shipping Co., 743 F.2d 635 (9th Cir.), cert. denied, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984), the Ninth Circuit declined to compel consolidation, stating:
 
 
 29
 The district court correctly held that our authority under the [FAA] is narrowly circumscribed.... [W]e can only determine whether a written arbitration agreement exists, and if it does, enforce it "in accordance with its terms." As the district court noted, this provision "comports with the statute's underlying premise that arbitration is a creature of contract, and that '[a]n agreement to arbitrate before a special tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.' Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 [94 S.Ct. 2449, 2457, 41 L.Ed.2d 270] ... (1974)."
 
 
 30
 Id. at 637. Similarly, the Sixth Circuit has made clear that "a court is not permitted to interfere with private arbitration arrangements in order to impose its own view of speed and economy. This is the case even where the result would be the possibly inefficient maintenance of separate proceedings." American Centennial Ins. Co. v. National Casualty Co., 951 F.2d 107, 108 (6th Cir.1991); see also Baesler v. Continental Grain Co., 900 F.2d 1193, 1195 (8th Cir.1990) ("The Supreme Court has explicitly rejected the assertion that the overriding goal of the [FAA] is to promote the expeditious resolution of claims."); Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp., 873 F.2d 281, 282 (11th Cir.1989) (per curiam) ("Parties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them in."); Del E. Webb Constr. v. Richardson Hosp. Auth., 823 F.2d 145, 150 (5th Cir.1987) ("[U]nder § 4 of the [FAA] the sole question for the district court is whether there is a written agreement among the parties providing for consolidated arbitration."). One district court in this Circuit has held that it was without authority to consolidate arbitrations in light of Byrd. Ore & Chemical Corp. v. Stinnes Interoil, 606 F.Supp. 1510, 1513 (S.D.N.Y.1985) ("the Second Circuit's reliance in Nereus on the 'liberal purposes' of the [FAA] was misplaced").
 
 B
 
 31
 The United Kingdom also claims that the district court has the authority to compel consolidation of the United Kingdom/Boeing and United Kingdom/Textron arbitrations pursuant to the Federal Rules of Civil Procedure, Rules 42(a) and 81(a)(3). The United Kingdom and the district court point out that in Nereus, we specifically stated that Rules 42(a) and 81(a)(3) were applicable. Nereus, 527 F.2d at 975. We hold that these rules are not applicable to the case before us.
 
 
 32
 Rule 42(a) provides, in pertinent part, that "[w]hen actions involving a common question of law or fact are pending before the court ... it may order all the actions consolidated." Rule 81(a)(3) provides, in pertinent part, that "[i]n proceedings under Title 9, U.S.C., relating to arbitration, ... [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." The United Kingdom asserts that Rule 42(a) as incorporated through Rule 81(a)(3) allows, or at least "provide[s] valuable guidance" to, the district court to consolidate private arbitration proceedings in appropriate situations. We reject this argument. Rule 81(a)(3) merely allows the application of the Federal Rules of Civil Procedure to judicial proceedings that are before a court pursuant to U.S.C. Title 9, to the extent that Title 9 does not provide appropriate procedural rules. Rule 81(a)(3) clearly does not import the Federal Rules of Civil Procedure to the private arbitration proceedings that underlie the Title 9 proceedings pending before a court. See 4 C. Wright & A. Miller, Federal Practice and Procedure § 1015, at 66-67 (1987) ("It is only the judicial proceedings under the [FAA] ... that are subject to the rules. The federal rules do not govern the procedure in the hearings before the arbitrators.") (footnote omitted); Washington-Baltimore Newspaper Guild v. The Washington Post Co., 442 F.2d 1234, 1239 (D.C.Cir.1971) ("[None] of the Federal Rules of Civil Procedure was ever designed to apply to proceedings in other than the United States District Courts.") (citation omitted); Foremost Yarn Mills v. Rose Mills, 25 F.R.D. 9, 11 (E.D.Pa.1960) ("it is clearly evident that the [FAA] itself does not in any wise attempt to regulate the procedures before the arbitrators or prescribe rules or regulations with respect to hearings before arbitrators"). Therefore, although a district judge considering related petitions to compel arbitration can have all of the petitions heard at once pursuant to Rule 42(a), he or she could not use Rule 42(a) to order that the underlying arbitrations, once compelled, be conducted together.
 
 
 33
 The United Kingdom also makes much of the inefficiencies and possible inconsistent determinations that may result if the United Kingdom/Boeing and United Kingdom/Textron arbitrations are allowed to proceed separately. Although these may be valid concerns to the United Kingdom, they do not provide us with the authority to reform the private contracts which underlie this dispute. If contracting parties wish to have all disputes that arise from the same factual situation arbitrated in a single proceeding, they can simply provide for consolidated arbitration in the arbitration clauses to which they are a party. See Volt Info. Sciences, 489 U.S. at 479, 109 S.Ct. at 1255-56 ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, ... so too may they specify by contract the rules under which that arbitration will be conducted.") (citation omitted).
 
 CONCLUSION
 
 34
 We reverse the judgment of the district court granting the United Kingdom's Petition to Compel Consolidated Arbitration and we hold that the district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation. To the extent our decision in Nereus is based on the Federal Rules of Civil Procedure and the "liberal purposes" of the Federal Arbitration Act, we hold that it is no longer good law. We do not disturb Nereus to the extent it is based on the general equitable powers of the court and principles of contract law.
 
 
 
 *
 Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation
 
 
 [1]
 P/R Clipper Gas v. PPG Indus., 804 F.Supp. 570, 575 (S.D.N.Y.1992); Rio Energy Int'l v. Hilton Oil Transport, 776 F.Supp. 120, 122 (S.D.N.Y.1991); North River Ins. Co. v. Philadelphia Reinsurance Corp., 1991 WL 90735, at (S.D.N.Y. May 23, 1991); Benship Int'l v. Phosphate Chemicals Export Ass'n, 771 F.Supp. 87, 88-89 (S.D.N.Y.1991); Elmarina, Inc. v. Comexas, N.V., 679 F.Supp. 388, 390 (S.D.N.Y.1988); Cable Belt Conveyors v. Alumina Partners, 669 F.Supp. 577, 578-80 (S.D.N.Y.), aff'd, 857 F.2d 1461 (2d Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987); Sociedad Anonima de Navegacion Petrolera v. Cia de Petroleos de Chile S.A., 634 F.Supp. 805, 807-09 (S.D.N.Y.1986); In re Shoyo Shipping Co., 1986 Am. Mar. Cas. 2374, 2375, 1986 WL 11607 (S.D.N.Y.1986); In re Tidewater Terminal Inc., 1986 Am. Mar. Cas. 1176, 1177-78, 1983 WL 1577 (S.D.N.Y.1983); Conoco Shipping Co. v. Norse Shipping Co., 1983 Am. Mar. Cas. 1146, 1147 (S.D.N.Y.1983); In re Voest-Alpine Int'l, 1982 Am. Mar. Cas. 921, 922-23 (S.D.N.Y.1982); In re Czarnikow-Rionda Co., 512 F.Supp. 1308, 1309 (S.D.N.Y.1981); In re General Navigation, 1981 Am. Mar. Cas. 1781, 1783 (S.D.N.Y.1981); Marine Trading Ltd. v. Ore Int'l Corp., 432 F.Supp. 683, 684 (S.D.N.Y.1977). But see Ore & Chemical Corp. v. Stinnes Interoil, 606 F.Supp. 1510, 1512-13 (S.D.N.Y.1985) (holding district court does not have authority to consolidate arbitrations because Nereus is no longer good law)
 
 
 [2]
 Although in New England Energy v. Keystone Shipping Co., 855 F.2d 1 (1st Cir.1988), cert. denied, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989), the First Circuit held that a district court could order consolidation of separate arbitration proceedings, that court relied on a state arbitration law that specifically authorizes such consolidation. Id. at 7