In the Matter of the Arbitration between

**The NORTH RIVER INSURANCE COMPANY, Petitioner,**

v.

**PHILADELPHIA REINSURANCE CORPORATION, Assicurazioni Generali, Excess and Casualty Reinsurance Association, and Underwriters and Underwriting Syndicates at Lloyd's and Foreign Companies Subscribing to Second Excess of Loss Reinsurance Contract No. R64939, Respondents.**

No. 90 Civ. 7002 (CSH).

United States District Court,
S.D. New York.

July 13, 1994.

Simpson Thacher & Bartlett, New York City (John S. Kerr, Jr., Andrew S. Amer, Laura J. Levine, of counsel), for petitioner.

Siller Wilk & Mencher, New York City, Preston Gates Ellis & Rouvelas Meeds, Washington, DC (Allen G. Reiter, Kathryn P. Broderick, William Gray Schaffer, of counsel), for respondents Philadelphia Reinsurance Corp., Assicurazioni Generali, Excess and Cas. Management Corp. (on behalf of Members of Excess and Cas. Reinsurance Ass'n), and The Reinsurance Corp. of New York.

Mendes & Mount, New York City (Robert M. Mangino, Jr., Ronald R. Houdlett, of counsel), for respondents Underwriters and Underwriting Syndicates at Lloyd's and Foreign Companies Subscribing to Second Excess of Loss Reinsurance Contract No. R64939.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Following an award rendered at the conclusion of a consolidated arbitration, the prevailing insurance company petitions to confirm the award. Respondents, the two groups of reinsurers against whom the award was rendered, cross-move to vacate it. They contend that this Court's order of consolidation was improvidently made, requiring vacatur; and that events occurring during the arbitration hearings demand the same result. Because I agree with respondents that recent Second Circuit authority condemns consolidation on the facts of this case, I vacate the award on that ground and reach no other issue.

### Background

Petitioner North River Insurance Company ("North River") insured the GAF Corporation ("GAF"), an asbestos manufacturer, under a liability policy in effect for three annual policy periods from May 1, 1970 through April 30, 1973. During the 1980's GAF was sued in many lawsuits alleging injury from exposure to its asbestos products. North River's policy obligated it to cover such claims in the amount of $5 million for each of these three policy periods. In consequence it has paid out a total of $15 million to GAF.

Respondents are domestic and foreign reinsurers who, together with seven other reinsurers, reinsured North River under reinsurance treaty programs in effect during the three GAF annual policy periods in suit. The treaties provided a first layer of reinsurance coverage in the amount of $750,000 in excess of a $250,000 "per occurrence" retention (or deductible), and a second layer of $4,000,000 in excess of a $1,000,000 "per occurrence" retention (the first layer of coverage). A reinsurance treaty involves an ongoing contractual relationship between insurance companies, in which the primary insurer agrees in advance to cede, and the reinsurer to accept, specified business that is the subject of the contract. Typically, as in this case, a reinsurance treaty involves the participation of many reinsurers, each accepting a percentage of the total liability under a single treaty.

The present respondents fall into two groups. The "U.S. Reinsurers" include respondents Philadelphia Reinsurance Corporation, Assicurazioni Generali, Excess and Treaty Management Corporation (on behalf of the members of Excess and Casualty Reinsurance Association), and The Reinsurance Corporation of New York. The "London Reinsurers" include respondents Underwriters and Underwriting Syndicates at Lloyd's and Foreign Companies Subscribing to Second Excess of Loss Reinsurance Contract No. R64939. I shall hereafter refer to respondents by their respective group names.

A reinsurer signifies its participation in a reinsurance treaty by subscribing to the treaty. In the case at bar the London Reinsurers participated only in the second layer treaties. They agreed to an "aggregate endorsement" which became a part of the treaties subscribed to by those reinsurers. The aggregate endorsement gave North River certain options in combining products liability claims and submitting them to the London Reinsurers for coverage under different formulae. The aggregate endorsement was not included in the treaties to which the U.S. Reinsurers subscribed.

Each reinsurance treaty contained an arbitration clause, appearing in Article XV, which provided:

> IF ANY DISPUTE SHALL ARISE BETWEEN THE REINSURED AND THE REINSURER WITH REFERENCE TO THE INTERPRETATION OF THIS CONTRACT OR THEIR RIGHTS WITH RESPECT TO ANY TRANSACTION INVOLVED, THE DISPUTE SHALL BE REFERRED TO THREE ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY AND THE THIRD BY THE TWO SO CHOSEN. IF EITHER PARTY REFUSES OR NEGLECTS TO APPOINT AN ARBITRATOR WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF WRITTEN NOTICE FROM THE OTHER PARTY REQUESTING IT TO DO SO, THE REQUESTING PARTY MAY NOMINATE TWO ARBITRATORS WHO SHALL CHOOSE THE THIRD.

EACH PARTY SHALL SUBMIT ITS CASE TO THE ARBITRATORS WITHIN THIRTY (30) DAYS OF THE APPOINTMENT OF THE ARBITRATORS. THE ARBITRATORS SHALL CONSIDER THIS CONTRACT AN HONORABLE ENGAGEMENT RATHER THAN MERELY A LEGAL OBLIGATION; THEY ARE RELIEVED OF ALL JUDICIAL FORMALITIES AND MAY ABSTAIN FROM FOLLOWING THE STRICT RULES OF LAW. THE DECISION OF A MAJORITY OF THE ARBITRATORS SHALL BE FINAL AND BINDING ON BOTH THE REINSURED AND THE REINSURER. THE EXPENSE OF THE ARBITRATORS AND OF THE ARBITRATION SHALL BE EQUALLY DIVIDED BETWEEN THE REINSURED AND THE REINSURER. ANY SUCH ARBITRATION SHALL TAKE PLACE IN NEW YORK, NEW YORK, UNLESS SOME OTHER LOCATION IS MUTUALLY AGREED UPON BY THE REINSURED AND THE REINSURER.

North River, having paid under its primary policies with GAF, presented claims under the treaties as it construed them to the reinsurers. The present respondents rejected North River's claims in whole or in part. A principal bone of contention related to the meaning of "single occurrence" as that phrase was used in the treaties to define North River's "retention," i.e., the deductible amount. North River contended that only one occurrence was involved, namely, GAF's manufacture and sale of asbestos products, and hence only one $250,000 retention applied. The respondents contended that the asbestos claims arose from multiple occurrences, each subject to a $250,000 retention. The calculation in respect of the London Reinsurers was further complicated by the effect of the aggregate endorsement.

In December 1988, North River commenced arbitration proceedings against the four U.S. Reinsurers, who retained the same counsel to defend them, appointed the same arbitrator, Joseph F. Murphy, and by their conduct agreed to a consolidated arbitration between themselves and North River, which had appointed Vincent Vaccarello as its arbitrator. On October 3, 1989 North River served a separate notice of intention to arbitrate upon the London Reinsurers. North River again appointed Mr. Vaccarello as its arbitrator. The London Reinsurers retained different counsel from those defending the U.S. Underwriters, but appointed Mr. Murphy as their arbitrator. It may therefore be said that the London Reinsurers agreed to a consolidated arbitration between North River and themselves.

The case first came to the attention of this Court when North River filed a petition dated October 30, 1990 under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. North River complained of the delay in selecting a third arbitrator. One sticking point arose from Mr. Murphy's insistence, in responding to the correspondence from Mr. Vaccarello, that he was speaking only for the U.S. Reinsurers, the London Reinsurers having not yet instructed him on the question of the third arbitrator. In these circumstances, North River petitioned the Court under FAA § 4 for an order directing that its arbitration with the U.S. Reinsurers be consolidated with the London Reinsurers arbitration, and appointing a third arbitrator to participate in that consolidated arbitration.

The U.S. Reinsurers and the London Reinsurers, while having agreed to a single arbitration between North River and the members of those respective groups, objected to a further consolidation of the U.S. Reinsurers and London Reinsurers arbitrations into a single proceeding before one panel of arbitrators. Respondents based that objection upon various perceived disadvantages to their respective defensive positions.

In a Memorandum Opinion and Order dated May 23, 1991, I overruled the Reinsurers' objections and ordered a consolidated arbitration. I did so specifically on the authority of the Second Circuit's decision in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), which in the context of a maritime contract of charterparty and a third-party guarantor of performance directed a consolidated arbitration "in the interest

of justice" because "[t]here were not only common questions of law and fact in the two arbitrations but there was danger of conflicting findings ..." *Id.* at 976 (cited and quoted in this Court's May 23, 1991 opinion at slip op. 2–3).

The May 23, 1991 opinion also specified procedures that would be followed if Messrs. Vaccarello and Murphy could not agree on the third member of the consolidated arbitration panel.

I did not enter a judgment implementing the May 23, 1991 opinion; nor was I asked to do so. Everyone awaited developments. Messrs. Vaccarello and Murphy could not agree on a third arbitrator. This Court, following the procedures outlined in the May 23, 1991 opinion, appointed Mr. David J. Sherwood as third arbitrator in a Memorandum Opinion and Order dated July 19, 1991 which concluded with the sentence: "This Court will retain jurisdiction in the event of any post-award proceedings." I entered no judgment in respect of this opinion.

Following discovery, the hearings before the arbitrators began on July 9, 1993 and were concluded on July 12. On October 21, 1993, the arbitration panel rendered a 2–1 award in North River's favor. Mr. Murphy dissented.

On November 5, 1993 North River petitioned this Court under § 9 of the FAA to confirm the award. On November 6, 1993 the U.S. Reinsurers and London Reinsurers cross-moved under FAA § 10 to vacate it.

The Reinsurers' first ground for vacatur arises out of the Second Circuit's overruling of *Nereus* in *The Government of the United Kingdom of Great Britain v. The Boeing Company,* 998 F.2d 68 (2d Cir.1993). The Second Circuit decided *Boeing* on June 29, 1993. West first published the opinion in its advance sheets dated September 13, 1993. Presumably at an earlier date the opinion's text was available on-line through both Westlaw and Lexis. The court of appeals also disseminates printed slip opinions.

As alternative grounds for vacatur, respondents complain of the arbitrators' refusal to hear the testimony of one of their witnesses, and a reference by North River's counsel during the hearings to an earlier arbitration involving another of the GAF reinsurers, in alleged violation of an agreement governing the conduct of the arbitration at bar.

## Discussion

██ Notwithstanding North River's protestations to the contrary, it is crystal clear that the Second Circuit's opinion in *Boeing* overrules that aspect of *Nereus* upon which I relied in directing a consolidated arbitration over the objections of the two groups of Reinsurers.

In *Boeing* the Second Circuit acknowledged *Nereus*'s conclusion "that the FAA's 'liberal purposes' and the Federal Rules of Civil Procedure allow us to consolidate arbitration proceedings absent consent." 998 F.2d at 71. In footnote 1 on that page the court of appeals collects a number of district court cases directing consolidated arbitrations on the strength of the *Nereus* conclusion; my May 23, 1991 opinion in the instant case is one of them. But that conclusion, the court of appeals squarely holds in *Boeing,* "is no longer good law." *Id.* The rule in this circuit now is that "the district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation." *Id.* at 74. It is profitless for a district judge to analyze how the court of appeals arrived at that conclusion. I am bound by it.

██ In the case at bar the two groups of Reinsurers opposed consolidation. *Boeing* therefore impacts upon the case unless it can be said that all the respondent Reinsurers were bound by the same agreement to arbitrate, or that in some manner they agreed to consolidation, notwithstanding their opposition at the time of North River's first petition to this Court.

I do not think that either proposition can be sustained. While each Reinsurer subscribed to the same treaty, the resulting arrangement was a number of separate contracts between the primary insurer on the one hand and, on the other, each reinsurer for its individually designated percentage of the total treaty liability. Those separate

contracts are capable of amendment or change in manners binding only on some reinsurers and not on others; the aggregate endorsement negotiated by North River and the London Reinsurers illustrates that principle. The contractual liability of reinsurers under a reinsurance treaty is traditionally regarded as several, not joint. *See* U.S. Reinsurers' Reply Brief at 9 n. 7.

Nor can the Reinsurers at bar be said to have agreed to a consolidated arbitration in their separate contracts. While the arbitration clause is the same in each subscribed treaty, it speaks in terms of disputes arising between "the reinsured and the *reinsurer*" (I have emphasized the singular form of the noun). North River did not suggest in its original petition to compel consolidation that the Reinsurers had contractually agreed to it; nor could it plausibly have done so. When a primary insurer and its several reinsurers wish to provide in their contracts for multi-party arbitration having the practical effect of consolidation, they know how to do so. Indeed, in 1981 the arbitration clause in the treaties at issue in this case was amended to provide that "[i]f more than one reinsurer is involved in the same dispute, all such reinsurers shall act as one party for purposes of this clause," an amendment which goes on to provide explicitly that it shall not be construed as "changing the liability of the reinsurers under the terms of this contract from several to joint." U.S. Reinsurers' Reply Brief at 9 n. 7. If by operation of law the Reinsurers had agreed to consolidated arbitration under the previously existing arbitration clause, there would have been no need to amend it.

Therefore I conclude that there is no principled way to distinguish the case at bar from *Boeing.* Surely in *Boeing* there were factors which under a "liberal" construction of the FAA militated in favor of consolidation. The case arose out of damage during ground testing to a helicopter owned by the United Kingdom. Boeing built the helicopter and Textron, Inc. built its engine. Presumably each company blamed the other for the accident, although the court of appeals' opinion does not say so expressly and the district court proceedings were sealed. Boeing and Textron had separate contracts with the United Kingdom containing identical arbitration clauses. The United Kingdom asked Boeing and Textron to agree to a consolidated arbitration. The desired benefits to the United Kingdom were apparent, including the avoidance of inconsistent awards. Boeing refused. The United Kingdom petitioned this Court (Stanton, J.) to order a consolidated arbitration. Judge Stanton did so, on the authority of *Nereus,* entered judgment accordingly, and stayed his judgment pending appeal. The Second Circuit overruled *Nereus* and reversed. The case at bar cannot be distinguished from *Boeing.*

 The remaining question is whether respondents are procedurally barred from raising the point. North River says that the Reinsurers' failure to appeal from this Court's May 23 and July 19, 1991 opinions and orders calls into play the law of the case doctrine, so that the consolidated arbitration directed by the May 23 opinion is invulnerable to attack. In addition, North River contends that the particular circumstances of this case do not fall within the FAA's limited grounds for vacating an award; and that the Reinsurers are barred by the equitable doctrines of waiver and estoppel. These arguments are not persuasive.

It is not at all clear that this Court's May 23, 1991 opinion and order directing consolidation was appealable. In *Boeing* Judge Stanton entered a judgment on his consolidation order; the court of appeals concluded that in that circumstance it had jurisdiction under 28 U.S.C. § 1291. In *Nereus* the court of appeals did not articulate the basis for its jurisdiction over the unsuccessful appeal from the district court's consolidation order. Perhaps the court regarded it as an interlocutory decree in an admiralty case, appealable under § 1292(a)(3). The case at bar is not an admiralty case. In any event, the 1988 amendments to the FAA, 9 U.S.C. § 16, cast doubt on the appealability of this Court's prior orders. § 16(b)(2) provides that except as otherwise provided in 28 U.S.C. § 1292(b), an appeal may not be taken from an interlocutory order "directing arbitration to proceed under section 4 of this title." In its original petition North River

invoked 9 U.S.C. § 4, and my May 23, 1991 order directed "arbitration to proceed" in a consolidated form. Certification of an interlocutory appeal under § 1292(b) was neither sought nor granted.

Quite apart from these technicalities, the Second Circuit has made it plain that the law of the case doctrine may have no legitimate office to perform where a fundamental change in the governing law impacts directly upon the parties' rights and obligations. *See Crane Co. v. American Standard, Inc.,* 603 F.2d 244 (2d Cir.1979) (law of case doctrine did not require court of appeals to adhere to its prior holding that securities plaintiff had standing to sue, in light of Supreme Court's subsequent ruling that such plaintiffs lacked standing). The rationale of *Crane* renders inconsequential whether my May 23, 1991 order should be regarded as final or interlocutory, a question on which the parties expend much energy in their briefs. I apply the reasoning of *Crane* to the case at bar. I retained jurisdiction over this case to adjudicate any post-award applications. I am now presented with cross-motions to confirm and vacate the award. This court has not yet entered a final judgment. The Second Circuit's decision in *Boeing* announces a fundamental change, binding upon me, in that court's view of the propriety of consolidated arbitrations. What *Nereus* praised and encouraged, *Boeing* casts into outer darkness beyond hope of redemption. My order of consolidation, while correct under *Nereus,* must be perceived in the light of *Boeing* as improvidently made. Absent their consent, respondents could not legally be forced into a consolidated arbitration. They are entitled to redress at the hands of this court.

North River's invocation of waiver and estoppel depends primarily on the timing of the *Boeing* decision, dated June 29, 1993. North River chides respondents for keeping the decision and its rationale up their sleeves until the award came down against them on August 21, 1993. But the law reporting company upon which the profession relies did not publish *Boeing* in written form until September 13, 1993, after the award. It is in such advance sheets that recently decided cases are for the first time indexed and cross-referenced with respect to statute, rule and subject matter. The respondents' reply papers stop short of claiming that counsel did not know of the *Boeing* decision until after the award; and it was possible for them to learn of it earlier, through slip opinions disseminated by the court of appeals or the electronic marvels of this new computerized age. But the arbitration hearings, after prolonged discovery, were scheduled to begin on July 9, 1993, only ten days after the Second Circuit decided *Boeing.* I see nothing in this chronology or in any of the other circumstances of the case sufficient to raise an equitable bar against the relief respondents seek.

I think that these rather special circumstances require vacatur of the award and a remand for separate arbitrations *de novo,* whether or not the case falls precisely within one of the grounds for vacatur specified in § 10 of the FAA. But if such a ground is necessary to the result, I conclude that the arbitrators in the consolidated arbitration exceeded the powers conferred upon them by the parties' I contracts, in violation of § 10(d). To be sure, the arbitrators acted in fulfillment of this Court's order; but *Boeing* makes it clear that, in all innocence, I exceeded my powers; and since the arbitrators derived their powers from my order, so did they.

Since there must be new and separate arbitrations, I do not reach the respondents' alternative grounds for vacatur based upon alleged improprieties in the conduct of the prior arbitration hearings.

It is in one sense regrettable that the time and resources expended on the first arbitration may have been partially wasted, although one hopes that by stipulation or otherwise much of the evidence discovered and presented may be utilized at the new arbitrations. However, the governing principle must be that declared by the Second Circuit in *Boeing* at 998 F.2d 70: "[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms" (citing and quoting *Volt Info. Sciences v. Board of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)). Because the

**856**

respondents at bar did not agree to a consolidated arbitration and objected to its imposition upon them, I am compelled to vacate the award. I have considered all of North River's arguments. They do not alter this conclusion.

For the foregoing reasons, the petitioner to confirm the arbitration award is denied. Respondents' cross-motion to vacate the award is granted. The parties are directed to proceed with separate arbitrations consistent with this Opinion. This Court retains jurisdiction.

It is SO ORDERED.