**In re Michael N. ALTMAN, Debtor.**

**Bankruptcy No. 94–51898.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 16, 1999.

Robert Fleischer, Jacobs Goldman LLC, Norwalk, Connecticut, for movant/debtor Michael N. Altman.

Douglas E. Spelfogel, Garden City, New York, for respondent Rafael Galleries, Inc. and Benjamin Aryeh.

## ORDER DENYING DEBTOR'S MOTION FOR A STAY PENDING APPEAL

ALAN H. W. SHIFF, Chief Judge.

 On February 1, 1999, this court made the determination under 11 U.S.C. § 1104 that the appointment of a chapter 11 trustee in this case is warranted. *In re Altman,* 230 B.R. 6 (Bankr.D.Conn.1999) (the "Order"). On February 9, 1999, the debtor filed a motion seeking a stay pending appeal of that decision.

> To determine whether a stay of an order pending appeal is appropriate, a court must evaluate the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Rodriguez v. DeBuono,* 162 F.3d 56, 61 (2nd Cir.1998). *See also In re Country Squire Assoc. of Carle Place, L.P.,* 203 B.R. 182, 183 (2nd Cir. BAP 1996); *Hirschfeld v. Board of Elections,* 984 F.2d 35, 40–41 (2d Cir.1993); *In re VVF Communications,* 41 B.R. 546, 549 (Bankr.D.C.1984) (denying a stay pending appeal of an order appointing a trustee). The test requires that before a stay may be

granted, the balance of the hardships must favor the movant. *Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2nd Cir.1996). For the reasons that follow, it is found that the balance of hardships favors the respondent, Rafael.

### Irreparable Injury to Movant Absent a Stay

"A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay. Under that test, the moving party must demonstrate that such injury is likely before the other requirements will be considered." *In re City Bridgeport*, 132 B.R. 81, 83 (Bankr.D.Conn.1991). Moreover, "the moving party is required to show that injury is imminent, not remote or speculative." *Id.*

In seeking a stay, the debtor argues that any trustee appointed in this case:

> will almost certainly take actions which will have far reaching implications for the Debtor, including the Debtor's interest in his principal residence and his place of employment, interests clearly no less worthy of protection than the piece of commercial real estate that was at stake in *Country Squire.*

*Motion* at 3.

The debtor argues unpersuasively that the facts presented by the instant motion are analogous to those where a foreclosure sale is imminent. He claims that he has made substantial improvements on his residence in the four years since he filed his bankruptcy petition on September 29, 1994, and has further made post-petition payments on the mortgage encumbering his residence. However, the appointment of a trustee does not constitute an irreparable injury or indeed any injury at all because a trustee's powers are essentially equivalent to those of a debtor in possession, i.e., any trustee appointed in this case has the fiduciary duty to maximize the estate for distribution to creditors, *see* §§ 704, 1106, as does this debtor in possession. *See* § 1107. *See also, In re Keene Corp.*, 205 B.R. 690, 696 (Bankr.S.D.N.Y. 1997).

Moreover, even assuming *arguendo* that a potential injury to the debtor might arise from the appointment of a trustee, such an injury is not irreparable because the court retains the power under § 1105 to at any time "terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate, and operation of the debtor's business." *See In re VVF Communications, supra*, 41 B.R. at 549.

### Substantial Injury to a Party if a Stay is Granted

The debtor, who has consistently taken the position that the Painting is not property of the estate, in contrast to Rafael, contends that Rafael and any others who may be creditors would not be substantially injured by delay. The argument is premised on the notion that "the delay involved in an appeal diminishes in significance given the long pendency of this case already, and will clearly not injure any of the debtor's creditors." *Motion* at 4. But every delay entails the accrual of additional interest owed to any over-secured creditors and a consequent diminution of the estate. In addition, having concluded that the debtor is an untrustworthy custodian of his business records and inventory,[1] *see Order*, 230 B.R. at 16–17, in part because of his dubious understanding of what he may do in the ordinary course of business, *see Order*, 230 B.R. at 11–12, and § 547(2)(A), there is a significant danger that delay in the appointment of a trustee will exacerbate that injury.

### Likelihood of Success on the Merits

The Order noted, *inter alia*, the debtor's lack of credibility and concluded that he engaged in "fraud, dishonesty, incompetence, or gross mismanagement" of his affairs. *See Order*, 230 B.R. at 12–13, 16–17. Those findings alone compel the conclusion that the debtor is not likely to succeed on the merits

---

1. The attorney for Rafael asserted at the hearing on the debtor's motion for stay pending appeal that the debtor's inventory is worth several million dollars. The debtor's attorney did not contest that assertion.

of his appeal. Apart from that general observation, the debtor's specific arguments do not establish a likelihood of success on appeal.

*Standing*

 The debtor contends that the Order "failed to determine an essential matter precedent to the issue of [whether to appoint] a trustee: whether [Rafael] had a valid claim at all.... In the absence of a valid claim, [Rafael] lacked standing to bring the Trustee Motion." The argument is unpersuasive. First, if it was ever raised, it is deemed waived. The debtor did not pursue the issue of Rafael's standing at the trial or at any time in the 21 months since, until he raised it in this motion. It is therefore untimely. *See Gribben v. United States (In re Gribben),* 158 B.R. 920, 921–22 (S.D.N.Y.1993) (Government's failure to raise issue of standing in proceedings before bankruptcy court waived any argument on appeal that debtor lacked statutory standing to seek turnover of tax refunds.) Apart from that, the mere filing of an objection to Rafael's proof of claim, *see* Dkt. no. 65, which has not been ruled upon, *see* § 502, does not deprive Rafael of standing. Moreover, the debtor has admitted that he personally owed Rafael $40,000 and that his corporation AFA owed Rafael $175,000, thereby acknowledging the validity of at least part of Rafael's claim. *See Tr. 2* at 124. Any argument that Rafael lacked standing is therefore unlikely to succeed on appeal.

 Even assuming Rafael did not have standing, Rafael's standing was not a prerequisite to trustee appointment. Notwithstanding the language in § 1104(a) limiting appointment of a trustee in a chapter 11 case "on request of a party in interest or the United States trustee" this court may *sua sponte* appoint a trustee pursuant to § 105. *See Fukutomi v. United States Trustee (In re Bibo, Inc.),* 76 F.3d 256, 258 (9th Cir.), *cert. denied,* 519 U.S. 817, 117 S.Ct. 69, 136 L.Ed.2d 29 (1996). While the Order did not specifically invoke § 105 as the source of this court's authority for the appointment of a trustee, its use is nonetheless appropriate because the debtor orchestrated a series of transfers of the Painting which ignored the security interests of others, and he either negligently or purposefully failed to keep adequate business records. *Order,* 230 B.R. at 16–17.

*Consignment*

The debtor argues that the Order "clearly went beyond the record at the hearing in reaching its decision by, *inter alia,* consulting references about consignment." The debtor contends that those circumstances denied him fundamental due process by his "not being able to probe the validity and applicability of these outside sources and to present evidence and argument of his own to counter them." *Motion* at 5. The argument is unavailing because Rule 54(c), F.R.Civ.P., made applicable to bankruptcy proceedings by Rules 7054 and 9014, F.R.Bankr.P., "empowers the court to award the prevailing party relief justified by the evidence adduced at trial, even if such relief was not specifically requested in that party's pleading." *See Odell et al. v. Board of Trustees of the State University of New York,* 148 F.R.D. 474, 478 (N.D.N.Y.1993).

Further, the issue of whether the consignments of the Painting were "true" consignments was essential to the debtor's argument that it was not property of the estate under § 541(b). *Order,* 230 B.R. at 13. As to that issue, the debtor had the burden of proof. *Id.* Although the debtor also contests that aspect of the Order, *Motion* at 6, he provides no authority for his argument that the burden of proof was improperly assigned.

In addition, the debtor's challenge to the applicability of New York consignment law, as it pertained to Dr. Carroll's re-consignment, is rejected because the exclusive consignment option granted to the debtor in the exchange agreement brought the Painting into the estate as a pre-petition contract right to obtain property post-petition. *See* §§ 541(a)(1) and (7); *In re Bagen,* 186 B.R. 824, 828–830 (Bankr.S.D.N.Y.1995), *aff'd,* 201 B.R. 642 (S.D.N.Y.1996) ("By defining the term 'property of the estate' broadly, Congress intended to encompass contingent future payments that were subject to a condition precedent on the date of bankruptcy"); *Allen v. Levey (In re Allen),* 226 B.R. 857,

865 (Bankr.N.D.Ill.1998) (debtor's unexercised option held to be property of his bankruptcy estate upon filing). *See also Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312 (9th Cir.1995), *cert. denied,* 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996) (postpetition appreciation in home value is property of the estate).

*Fraudulent Transfer*

Next, the debtor asserts that this:

[c]ourt's entire decision hinges on a finding that the transfer of the [Painting] to AFA in derogation of any interest to [Rafael] and then the granting by AFA of a security interest in the [P]ainting to Cambridge Factors on July 28, 1988 were avoidable transfers.... Since the entire Trustee Order relies on the avoidability of these transfers as the predicates for the later determinations that other transfers were avoidable, those other transfers fall in turn.

*Motion* at 5.

The argument not only overlooks the alleged transfer by ABFA to Carole Altman on November 25, 1991 in violation of the debtor's global settlement with Cambridge, *see Order,* 230 B.R. at 9 and 15–16, it also overlooks the other arguments provided in the Order which justified the appointment of a trustee.

The debtor also takes issue with the Order's representation that "the parties have requested and the court has agreed to decide [the issue of fraudulent transfer] on the basis of the trial record established here." *Order,* at 15. A re-reading of the transcript of the hearing upon which that observation was made reflects that the Order is correct. The parties agreed that the court did not need to have an adversary proceeding in order to decide the issue of "[w]hether [there was] a fraudulent transfer." *See Tr. August 26, 1998* at 6–7.

*Corporate Veil*

Finally, while conceding that this court applied the correct corporate veil piercing standard, the debtor nonetheless challenges the Order's analysis which equated the debtor's individual identity with that of his various galleries. Specifically, the debtor argues that this court "improperly [drew] an inference of fraud" as to the debtor's alleged dominance over AFA in its "refusal to acknowledge [Rafael's] interest in the [P]ainting." *Motion* at 7. The argument is without merit. As the Order stated:

The debtor created, was the sole shareholder of, and controlled AFA. *See Tr. 2* at 78. The debtor's testimony disclosed that despite Rafael's $50,000 investment, he represented that AFA was the sole owner of the Painting. Indeed, just one month after Rafael's investment, the debtor, through AFA, used it as collateral for the Cambridge loan without disclosing Rafael's interest. Accordingly, the piercing of AFA's corporate veil is warranted.

*Order,* at 11–12.

None of the foregoing arguments establish that the debtor has made "a strong showing that he is likely to succeed on the merits," *Rodriguez v. DeBuono, supra,* 162 F.3d at 61. Nor has he demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal. *In re Country Squire, supra,* 203 B.R. at 183.

### The Public Interest

■ If a stay is granted, it would be appropriate for the debtor to post a bond pending the determination of the appeal. *See* Rule 8005, F.R.Bankr.P. His failure to propose or consent to posting such a bond weighs against granting a stay. The debtor has not identified any public interest consideration which would justify granting a stay pending appeal. Indeed, the public interest disfavors any stay of the Order because the debtor's untrustworthiness so clearly warrants the appointment of a trustee.

Accordingly, the motion is DENIED.[2]

---

2. The effective date of this order shall be post- poned until February 18th, 1999 in order to

permit the debtor the opportunity to obtain a stay before the Bankruptcy Appellate Panel. *See* Rule 8005, F.R.Bankr.P.