In re Michael N. ALTMAN, Debtor.

Roberta Carroll, Appellant,

v.

Rafael Galleries, Inc., and Benjamin Aryeh, Appellees.

No. 3:99CV702(JBA).

United States District Court, D. Connecticut.

July 27, 2000.

Robert C. Reichert, Robert U. Sattin, Eric Alexander Henzy, Reid & Riege, P.C., Hartford, CT, for Roberta L.A. Carroll.

James Berman, Zeisler & Zeisler, P.C., Bridgeport, CT, Mark Randolph Jacobs, Jacobs Partners, Merritt View, Norwalk, CT, Douglas E. Spelfogel, Berkman, Henoch, Peterson & Peddy, Garden City, NY, for Michael N. Altman, Benjamin Aryeh and Rafael Galleries, Inc.

Carol A. Felicetta, U.S. Trustee, New Haven, CT.

*MEMORANDUM OF DECISION ON APPEAL FROM BANKRUPTCY COURT*

ARTERTON, District Judge.

Appellant, Dr. Roberta Carroll ("Carroll") appeals the Bankruptcy Court's February 1, 1999 Memorandum and Order appointing a trustee ("Trustee Order"), *In re Altman*, 230 B.R. 6 (Bankr.D.Conn. 1999), which also held that the painting by American impressionist Richard E. Miller (1875–1943) alternately referred to as "Woman at Tea," a/k/a "Women at Tea," a/k/a "Woman on a Terrace, Giverny" a/k/a "Two Women Taking Tea" a/k/a "Women on a Terrace: Giverny" (the "Painting") was the property of the chapter 11 estate of Debtor Michael Altman ("Altman"), as well as the March 3, 1999 Order denying Carroll's Motion For a New Trial (R. 17).[1]

For the following reasons, the Trustee Order is VACATED insofar as it held that the Painting is the property of the Chapter 11 estate without affording Carroll adequate notice and opportunity to be heard as to her claimed interest in the Painting. The remainder of the Trustee Order has been affirmed in a separate opinion issued this date in *In re Altman*, No. 99cv347(JBA) (D.Conn. July 27, 2000), dismissing Altman's appeal of the order. Determination of whether the Painting is the property of the estate may be resolved in further proceedings in the Bankruptcy Court consistent with this ruling. Accordingly, Carroll's appeal challenging the Bankruptcy Court's denial of her Motion for a New Trial (R. 17) is DENIED as moot.

## Procedural Background

Altman filed a voluntary petition for bankruptcy under Chapter 11 on September 29, 1994. On February 1, 1995, Rafael Galleries, Inc. and Benjamin Aryeh (collectively "Galleries") filed a $300,000 proof of claim against the Altman estate based on

the amount it previously loaned Altman to purchase the Painting in June 1988. On October 30, 1995, Altman filed an objection to the Galleries' proof of claim. To date, Altman's objection to Galleries' proof of claim has not been ruled on by the Bankruptcy Court. On February 16, 1996, Galleries filed a Motion to Appoint a Trustee pursuant to 11 U.S.C. Section 1112 and/or 1104 asserting that Altman had engaged in the concealment of assets, deception and outright dishonesty. *See* R. 1. On April 30, 1997 and May 1, 1997, the Bankruptcy Court held a hearing on Galleries' Motion to Appoint a Trustee and Altman's objection to Galleries' proof of claim, at which time Altman testified, Carroll testified and documentary evidence was submitted. *See* R. 9; Add'l Item 5. Other than for her testimony, Carroll was excluded from the hearing pursuant to Fed.R.Evid. 615. *See* Apr. 30, 1997 Hearing. Tr., Add'l Item 15, at 26. On July 29, 1997, while the Motion to Appoint a Trustee was still under advisement, the Bankruptcy Court issued *sua sponte* a temporary restraining order preventing any further transfer or movement of the Painting from where it was stored (and remains at) the Berry Hill Galleries. *See* Add'l Item 4. On August 26, 1998, the Bankruptcy Court heard closing arguments on the Motion to Appoint a Trustee and accepted post-trial memoranda from Altman and Galleries. *See* R. 10.

On January 1999, before the Trustee Order issued, Carroll, who alleges she owns the Painting, filed a Motion for New Trial alleging that she had been deprived of due process because she had no prior notice that an issue to be resolved in the posture of the Motion to Appoint a Trustee was whether the Painting was or should be the property of the estate since she was never named as a defendant or respondent in any pleading filed by the Debtor or any other party in interest. *See* R. 12.

---

1. Items designated by Altman for inclusion in the record on appeal will be cited to as "R. ___" and those additional items designated by Galleries will be cited to as "Add'l Item ___." *See* Doc. # 15.

On February 1, 1999, the Bankruptcy Court ordered that a Chapter 11 trustee be appointed. *See In re Altman,* 230 B.R. 6. In the context of resolving Galleries' Motion to Appoint a Trustee, the Bankruptcy Court also determined that the Painting was the property of the estate on the basis of the record on the Motion to Appoint a Trustee. *See id.* at 15 (noting that Altman and Galleries agreed that the Court need not have an adversary proceeding in order to decide whether the there was a fraudulent transfer of the Painting, *citing* Aug. 26, 1998 Hearing Tr., R.10. at 3–7). The Bankruptcy Court concluded that the Painting was the property of the estate because the Painting had been fraudulently conveyed and/or invalidly consigned through a series of transfers involving Altman, companies controlled by Altman, Altman's mother and Carroll. The Court justified the appointment of a trustee because the "[d]ebtor deliberately or negligently orchestrated the Painting's cryptic path, by, *inter alia,* transferring it from gallery to gallery without any documentary record of those transfers, which obscured the identity of those who had an ownership or security interest," which demonstrated "even under a clear and convincing standard, fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor ..." *In re Altman,* 230 B.R. at 17. The Bankruptcy Court expressly stated that its determination to appoint the trustee was "justified even without a finding that the Painting is the property of the estate which the debtor should have sought to recover." *Id.*

On February 16, 1999, the Bankruptcy Court denied Altman's Motion for a Stay in appointment of the trustee pending his appeal of the order. *See In re Altman,* 230 B.R. 17 (Bankr.D.Conn.1999).[2] By a separate opinion issued this same date on Altman's appeal of the order appointing the trustee, *In re Altman,* Civ. No. 99cv347(JBA), the Trustee Order is otherwise affirmed.

## Legal Analysis

The gist of Carroll's appeal is that in deciding the Motion for a Trustee and denying her Motion for a New Trial, the Bankruptcy Court unnecessarily and prematurely concluded that the Painting was the property of the estate. Carroll contends that this conclusion effectively extinguished her claimed property interest in the Painting without affording her sufficient notice and opportunity to be heard as contemplated by the adversary proceeding provisions of Fed. R. Bankr.P. 7001, and that this failure violated her due process rights.

**1. Carroll's Standing to Appeal Trustee Order**

■■■ Before reaching the merits of Carroll's argument, the Court must address Galleries' claim that Carroll lacks standing to appeal the Trustee Order. Galleries asserts that Carroll lacks standing since the Bankruptcy Court determined that Carroll had no property right to the Painting having failed to perfect a "true consignment" under New York law. As the Second Circuit has previously noted, "[t]o have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." *Licensing Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 388 (2d Cir.1997). While Carroll might lack standing to appeal the appointment of the trustee as such, Carroll's appeal challenges that order only to the extent that it concluded the Painting was property of the estate. In finding that Carroll lacked standing in the context of denying her Motion for a New Trial, the Bankruptcy Court concluded that Carroll voluntarily relinquished her rights in the Painting by

**2.** Although Altman originally filed an appeal of the order denying his Motion For a Stay, *In re Altman,* Civ. No. 99cv529(RNC) (D.Conn. 1999), he subsequently withdrew this appeal after working out an interim day-to-day operational agreement with the trustee.

consigning it to one of Altman's corporations without effecting a "true consignment" under New York law based on the record developed by Altman and Galleries in the context of Galleries' Motion to Appoint a Trustee. *See* R. 17. The Bankruptcy Court's conclusion that Carroll lacked any pecuniary interest in the Painting, however, assumes the very fact that she seeks to challenge, if provided an opportunity to be heard. As acknowledged by Galleries during oral argument on appeal, if Carroll's alleged interest in the Painting is established such that the Painting is determined not to be the property of the estate, Carroll's pecuniary interest in the Painting would be separate and distinct from any administrative claim on the estate since it would not be subject to the priority and preference of claims established under the Bankruptcy Code.

While the Bankruptcy Court's finding that the Painting was fraudulently transferred to Carroll or that Carroll effectuated an invalid consignment of the Painting may prove accurate, Carroll has never been afforded an opportunity to present evidence to rebut these conclusions. Therefore, since Carroll claims ownership of the Painting and her claim to the Painting was effectively extinguished by the Trustee Opinion, the Court finds Carroll is an aggrieved party and has standing to appeal this conclusion contained within the Trustee Opinion.

## II. Merits on Appeal

■ Carroll contends that by determining that the Painting was the property of the estate, the Bankruptcy Court bypassed the procedural rules of the Bankruptcy Code designed to recover property from third-parties constituting assets properly belonging to or to be brought within the bankrupt's estate pursuant to 11 U.S.C. § 541(a). *See e.g.*, 11 U.S.C. § 541(b)(1) (constructive trust); § 548 (fraudulent

transfer); § 549 (post-petition transfer avoidance). Resort to any of these provisions usually requires an adversary proceeding pursuant to Fed. R. Bankr.P. 7001. Carroll contends that she was entitled to the notice and hearing that an adversary action provides.

Acknowledging the absence of an adversary proceeding under Bankr.R. Fed. P. 7001, Galleries contend that "courts have long recognized that the specifics of a case may not lend themselves toward adjudication through an adversary proceeding and consequently failure to proceed by an adversary proceeding was at best a technical issue which should not vitiate a court's adjudication of a matter absent proof of prejudice." Galleries Br. (Doc. # 26) at 26, 27. While Galleries is correct that courts have excused the lack of a formal adversarial proceeding to resolve disputed matters, these courts have only done so with respect to entities who were parties to the proceedings and thus had notice, participated in the hearings and otherwise had effective opportunity to be heard. *See e.g., In re Copper King Inn, Inc.*, 918 F.2d 1404 (9th Cir.1990) (holding that a party had waived its right to an adversarial proceeding because an "extensive hearing and subsequent briefing" gave the party "ample time to air its position").

In this case, Carroll's participation in the proceedings related to Galleries' Motion Appoint to a Trustee was limited to that of merely a witness. Indeed, Carroll was excluded from the courtroom pursuant to Fed.R.Evid. 615. *See* Apr. 30, 1997 Hearing Tr., Add'l Item 5 at 26. Though Altman and Galleries consented to have the issue of ownership of the Painting resolved without an adversary proceeding, *see* Aug. 26, 1998 Hearing Tr., R. 10 at 6–7, and would not now be heard to complain of the lack of adversarial proceeding, Carroll never consented to such a mode of resolution.[3] Therefore, Carroll did not

---

**3.** Carroll's Motion for New Trial following oral argument and post trial briefing on the Motion to Appoint a Trustee, but before rul-

ing, though admittedly delayed, further suggests Carroll's non-consent to Altman repre-

waive the right to have her property interest in the Painting resolved through an adversarial proceeding.

Galleries' claim that Altman's consent is imputable to Carroll in fact illustrates the heart of Carroll's claim of due process denial. Galleries contends that Carroll's due process rights were adequately protected for two reasons: 1) Altman and Carroll's interests were the same and thus her interests were properly represented in the proceedings; 2) Carroll had actual notice that the decision on the trustee motion would implicate her property interest in Painting. Galleries asserts that Carroll received notice by virtue of the fact that she had been previously noticed for examination under Fed. R. Bankr.P. 2004, her attorney participated at the hearing held in connection with Galleries' motion to compel her Rule 2004 examination, she testified as a witness at the hearing to Appoint a Trustee, she was expressly subject to the Bankruptcy Court restraining order of July 31, 1997 precluding her from transferring the Painting, and Carroll agreed to stay proceedings related to the ownership of the Painting in New York state court.

On July 1, 1996, Galleries made application to the Bankruptcy Court to examine Carroll under Fed. R. Bankr.P. 2004. In the application, Galleries indicated that:

4. As a result of the examination of the Debtor, however, numerous issues remain unresolved respecting, *inter alia,* the alleged transfers of a certain painting by the Debtor and/or certain entities controlled by the Debtor. Upon information and belief, Carole Altman, the Debtor's mother, was a transferee of the painting from the Debtor and a subsequent transferor of said painting to Roberta Carroll, the subsequent transferee.

5. Creditors seeks the entry of an order, pursuant to Rule 2004 authorizing it to take the examination of Roberta Carroll to inquire into inter alia: (i) the

senting her interests and her nonconsent to

terms and conditions surrounding the alleged transfers of the painting, both to Carole Altman and from Carole Altman to Roberta Carroll; and (ii) specifics as to the current status of the painting, so as to determine whether the painting constitutes property of the estate, as that term is defined in Section 541 of the Bankruptcy Court, as well as whether the above-referenced transfers may be avoidable, under either Section 547 or 548 of the Bankruptcy Code, or both.

Motion to Appoint Trustee, Add'l Item 1.

On July 10, 1996, the Bankruptcy Court entered the Rule 2004 Order permitting Galleries to examine Carroll regarding the alleged transfer of the painting back and forth between the parties. Specifically, the Rule 2004 Order stated:

Ordered, the Galleries are authorized to serve notice of Bankruptcy Rule 2004 examination, et cetera, by mailing, and conduct examinations of Roberta Carroll concerning the acts, conduct, terms and conditions surrounding the alleged transfers of a certain painting by Richard Miller entitled, "Women at Tea," by the debtor, to Carole Altman, and from Carole Altman to Roberta Carroll. Specifics as to this current status of the painting, proceeds of the sale of the painting in a manner affecting administration of this estate . . . .

Order Authorizing Examination of Roberta Carroll Pursuant to Bankruptcy Rule 2004 (July 10, 1996), R. 2.

After Carroll did not appear at her Rule 2004 deposition, Galleries filed a Motion to Compel Carroll to testify. On October 29, 1996, the Bankruptcy Court held a hearing on Galleries' Motion to Compel Carroll's examination and Motion to Further Amend the Pretrial Order. *See* Oct. 29, 1996 Hearing Tr., Add'l Item 2. At the October 29, 1996 hearing, Carroll was represented by counsel. During the October 29, 1996

the lack of an adversarial proceeding.

514

hearing, Galleries's attorney explained that:

> The issue of the transfer of the painting to Roberta Carroll on the date of the filing of the bankruptcy, and the issue of the transfer of the painting to the debtor's mother have never been dealt with, Judge, and those issues are ripe and the bankruptcy court is the place to deal with them because the bankruptcy court and the Bankruptcy Code empowers a trustee or a creditors' committee, if we could get one appointed, with sweeping power to bring those assets back into the estate.

Oct. 29, 1996 Hearing Tr., Add'l Item 2 at 9.

Revealingly, Galleries' attorney's comments reflect some understanding or contemplation that once a trustee was appointed, there would be further proceedings to bring assets such as the Painting, back into the bankrupt estate.

Later in the same hearing, the Bankruptcy Court explained to Carroll's attorney that Galleries' attorney was "going to be able to take a deposition. He's going to be able to try and prove, if he can, that the estate does have an interest, and he's going to try—he's going to be able to prove, if he can, that this property is being kept from the estate." *Id.* at 16. Following the hearing to compel the Rule 2004 examination, Carroll, Altman and Galleries signed a Stipulation Order indicating the scope of documents that would be produced. Altman agreed to produce documents to Galleries, and Carroll agreed to produce:

> 1. All documents relating to the transfer of the "Miller Painting" to Roberta Carroll and all copies of all canceled checks relating to that transfer;

> 2. All documents relating to any sale or transfer of any artwork within one year before the commencement of this case by and between Michael N. Altman and/or Michael N. Altman & Company

and Roberta Carroll, having a fair market value in excess of $10,000.00.

Stipulation filed Oct. 29, 1996, R. 3.

Contrary to Galleries' claim that Carroll was on notice that the hearings held in connection with the Motion to Appoint a Trustee would extinguish her interest or claim in the Painting, the hearing held to compel her Rule 2004 examination merely put her on notice that her interest in the Painting was likely to eventually be challenged once a trustee was appointed. Since the Bankruptcy Rules clearly contemplate and provide for an adversarial procedure to resolve the issue of whether property outside the estate may be brought in, the proceedings held on Galleries Motion to Appoint a Trustee did not adequately put Carroll on notice that this motion would also be the procedure for bringing the Painting into the estate. Similarly, the Bankruptcy Court's temporary restraining order issued in July 1997 after the trial evidence had closed and which only prohibited further transfer of the Painting (without prior Bankruptcy Court approval) did not put Carroll on actual notice that her interest in the Painting was about to be extinguished. Nor does the record demonstrate Galleries' claim that since Carroll knew that the concurrent New York state court litigation involving ownership of the Painting to which she was a party, had been continued or adjourned pending the outcome of the bankruptcy proceedings, Carroll had actual notice that her property interest in the Painting was to be finally resolved in the context of Galleries' Motion to Appoint a Trustee. At most, the record demonstrates that the parties agreed to adjourn the state proceeding "pending determination of a motion in the Bankruptcy Court in Connecticut which may have an impact on the painting which [is] central to the dispute before this Court." *See* Copy of Letter to Hon. Herman Cahn of 12/2/98 with copy to Carroll's, Galleries Br. Ex. 2. As is often the case, related federal or state court litigation is stayed pending the

outcome of a related bankruptcy case. Without more, such stay does not evince Carroll's consent to have the issue definitely resolved in the context of Galleries' Motion to Appoint a Trustee, to which she participated only as a witness and was otherwise excluded. Under these circumstances, the Court is unpersuaded that Carroll had actual notice that her claimed property interest in the Painting was to be finally determined in the context of Galleries' Motion to Appoint a Trustee.

Alternatively, Carroll challenges the Bankruptcy Court's conclusion that Carroll's "participation would have been redundant since her interest was aligned with the debtor's," and "her interest was adequately represented by the debtor at trial." Order Denying New Trial, R. 17 at 6. While Galleries is correct that under certain circumstances an individual could be bound by a decision to which it was not a party, such as for instance under a theory of collateral estoppel, *see Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir.2000) ("a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation"), the Bankruptcy Court made no such finding, nor was the Bankruptcy Court presented any evidence that Altman was the authorized representative of Carroll. In fact, the Bankruptcy Court was not presented with any evidence concerning the nature of the relationship between Carroll and Altman, if any. In certain respects, Altman's interests in excluding the Painting from the estate may have coincided with Carroll's claimed ownership in the Painting given his desire to avoid the appointment of a trustee. However, there was necessarily some tension given Altman's position as the debtor-in-possession. Under the Bankruptcy Code, the debtor-in-possession serves in place of the trustee and must seek to maximize assets of the Chapter 11 estate. *See* 11 U.S.C. § 1107(a) (debtor in possession has same rights, duties and obligations as trustee); *Jackson v. Levy*, No. 98 Civ. 8890(WHP),

2000 WL 124822, at *6 (S.D.N.Y. Feb. 2, 2000) ("[A] debtor-in-possession's fiduciary obligation to its creditors includes refraining from acting in a manner that could damage the estate or waste its assets"). Accordingly, Altman's obligation to maximize the property of his estate would be in direct conflict with Carroll's interest in keeping the Painting from the estate. *See In re Ropt, L.P.*, 209 B.R. 144 (1st Cir. BAP 1997) (finding it impermissible that Debtor's counsel could not have represented a third party's interest who was adverse to the estate); 11 U.S.C. § 327(a) (debtor-in-possession's attorney must be "disinterested" and may not represent any interest that is "adverse to the estate"). Notwithstanding the suspicious series of transfers and/or consignments leading up to and immediately following Altman's filing for bankruptcy, given the inherent conflict between Altman's obligation to maximize the estate and Carroll's interest in keeping the Painting outside the estate, this Court concludes that Altman did not represent Carroll such that their legal interests were identical.

Based solely on the evidence and arguments presented by Galleries and Altman, the Bankruptcy Court determined that Carroll had no interest in the Painting. While this may constitute an accurate prediction of what would have been demonstrated in a hearing to which Carroll participated as a party and not simply as a witness, this Court cannot endorse extinguishment of one's property right without adequate process. In essence, Carroll was adjudged to have no property interest in the Painting before her interest in the Painting was legally at issue. Under admittedly different, but analogous circumstances, the Supreme Court recently warned that such, "judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 1586, 146 L.Ed.2d

**516**

530 (2000). In *Nelson,* the Supreme Court found that the simultaneous amendment of the complaint and imposition of personal liability on Nelson, the president and sole shareholder of the plaintiff corporation, for the defendant's attorney fees in an unsuccessful patent suit after judgment had already entered against corporation, without first affording him an opportunity to respond violated both Fed.R.Civ.P. 15 and 12, and due process. While the Supreme Court found it was not error to permit amendment to add Nelson as a party given the defendant's concern that the judgment might not otherwise be collectible, the district court's instantaneous imposition of personal liability on Nelson (without relying on any theory of corporate veil piercing) did not provide him an opportunity to respond and contest his personal liability. In this case, the Bankruptcy Court determined Carroll had no interest in the Painting without ever provided her an opportunity to brief the issues or present evidence contesting the Bankruptcy Court's conclusion that she had no interest in the Painting. The Bankruptcy Court assumed, perhaps correctly, that Carroll would not be able to establish her interest in the Painting. However, as the Supreme Court noted in *Nelson,* "[p]rocedure of this style has been questioned even in systems, real and imaginary, less concerned than ours with the right to due process." *See Nelson v. Adams USA, Inc.,* 529 U.S. 460, 120 S.Ct. 1579, 1585 n. 2, 146 L.Ed.2d 530 (2000) (*referring* to L. Carroll, *Alice in Wonderland and Through the Looking Glass* 108 (Messner, 1982)).

Accordingly, under these circumstances, the Court finds that to the extent the Bankruptcy Court determined the Painting was the property of the estate without providing Carroll actual notice and a meaningful opportunity to be heard was not only procedurally deficient under Fed. R. Bankr.P. 7001, but also was fundamentally unfair, amounting to a denial of due process. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)

("The fundamental requisite of due process of law is the opportunity to be heard."); *see also In re Golden Plan of California,* 829 F.2d 705 (9th Cir.1986) (reversing district court's *sua sponte* finding that conveyances to investors from chapter 11 debtor were voidable transfers absent an adversarial proceeding and notice to investors); *In re Ropt, L.P.,* 209 B.R. 144 (1st Cir. BAP 1997) (vacating bankruptcy court's order that third party return cash to estate outside context of adversarial proceeding noting such action violated Rule 7001 and due process). While the Bankruptcy Court had every reason to be suspicious of the series of transfers and consignment arrangements involving the Painting both before and after Altman filed for bankruptcy, it went too far, too quickly, in reaching and determining the question of whether Carroll had no interest in the Painting. Since the Court finds that the proceedings below were procedurally defective, the Court need not address the merits Carroll's appeal with respect to the Bankruptcy Court's application on New York fraudulent conveyance and/or consignment law to the transfers to and from Carroll. The Court ventures no opinion here about the ultimate issue—whether the Painting is property of the estate—but simply concludes that the procedures utilized to decide that issue so far were flawed.

Finally, Galleries suggests that Carroll could or should have intervened earlier in the bankruptcy proceedings rather than adopt a wait-and-see approach as a means of achieving some strategic advantage. However, any such concerns and any corresponding delay in being able to sell the Painting could have been obviated had Galleries pursued the Painting ownership issue in an adversarial proceeding in which Carroll was joined.

**Conclusion**

For the foregoing reasons, that portion of the Trustee Opinion concluding that the Painting is the property of the Chapter 11

estate is VACATED, however in all other respects the order appointing the trustee remains in effect. The issue of whether the Painting is the property of the estate awaits determination by further proceedings in the Bankruptcy Court. Carroll's appeal of the Order Denying her Motion for a New Trial is DENIED as moot.

IT IS SO ORDERED.