In re Michael N. ALTMAN, Debtor

Alan Nisselson, Esq., Ch.
11 Trustee, Plaintiff,

v.

Dr. Roberta Carroll, Joseph Carroll,
Michael N. Altman, and Michael N.
Altman & Co., Inc., Defendants.

Bankruptcy No. 94–51898.
Adversary No. 00–05130.

United States Bankruptcy Court,
D. Connecticut.

Dec. 4, 2003.

Jon D. Kaplon, Brauner, Baron, Rosenzweig & Klein, LLP, New York City, for plaintiff trustee Alan Nisselson, Esq.

Robert Reichert, Reid & Riege, PC, Hartford, CT, for defendants Dr. Roberta and Joseph Carroll.

Ronald M. Terenzi, Berkman, Henoch, Peterson & Peddy, P.C., Garden City, NY, for objecting creditors Prin Corp., Benjamin Aryeh and Rafael Galleries.

## MEMORANDUM AND ORDER ON MOTION TO COMPROMISE

ALAN H.W. SHIFF, Bankruptcy Judge.

On December 13, 2001, the trustee, Roberta Carroll, and Joseph Carroll (collectively, the "Movants") filed the instant motion to compromise this adversary proceeding. The proposed settlement involves a painting by Richard E. Miller known as "Women at tea, Giverny," (the "Painting") which was a component of a 1994 transaction between the debtor and the Carrolls and has already been the subject of extensive litigation before the court. Creditors Benjamin Aryeh and Prin Corp. have objected. For the reasons that follow, the motion is granted.

## STANDARD FOR APPROVAL OF SETTLEMENT

Rule 9019(a), F.R.Bankr.P., provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Courts in this circuit may only approve a proposed settlement after an independent determination that it does not "fall below the lowest point in the range of reasonableness." *In re Best Prods. Co.,* 177 B.R. 791 (S.D.N.Y.1995), *aff'd,* 68 F.3d 26 (2d Cir.1995); *In re Raytech Corp.,* 261 B.R. 350, 359–60 (Bankr.D.Conn.2001). The inquiry requires this court to evaluate "the fairness of the terms of the compromise" and to "form an educated estimate of the complexity, expense, and likely duration of [any unsettled] litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a fair and full assessment of the wisdom of the proposed compromise." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

However, in applying that standard, it is not necessary for the court to conduct a mini-trial of the merits of the claims underlying the controversy. *Raytech,* 261 B.R. at 359–60. Moreover, courts need not conduct an independent investigation in formulating an opinion as

to the reasonableness of a settlement; rather, they may give weight to the trustee's informed judgment that a compromise is fair and equitable and to the competency and experience of counsel who support the settlement. *In re Drexel Burnham Lambert Group,* 134 B.R. 493, 496 (Bankr.S.D.N.Y.1991). In applying that standard to the instant dispute, it is apparent that the proposed settlement substantially exceeds the lowest point in the range of reasonableness.

## BACKGROUND

On February 1,1999, an order entered appointing a chapter 11 trustee (the "1999 Decision"). The 1999 Decision also held that the Painting was property of the debtor's bankruptcy estate. *See In re Altman,* 230 B.R. 6 (Bankr.D.Conn.1999). On appeal, the District Court vacated the order in part and remanded the matter to "afford [ Roberta] Carroll adequate notice and opportunity to be heard as to her claimed interest in the Painting." *In re Altman,* 254 B.R. 509, 510 (D.Conn.2000).[1] The trustee, whose appointment was affirmed, *id.,* commenced this adversary proceeding on September 29, 2000. The issue presented in the challenged settlement is the value of the consideration that would be given to the estate compared to the value of what the estate would give up.

The 1999 Decision recounted the historical ownership of the Painting to the extent that it could be determined. 230 B.R. at 8–9.[2] The court discussed a total of eight transfers, but for purposes of this ruling only one of those transfers needs to be specifically recalled:

The seventh transfer occurred on September 29, 1994, the date that the debtor filed the chapter 11 petition which commenced this case. On that date, [Michael N. Altman & Company] and the debtor ... sold the Painting to Joseph P. Carroll, a dealer who specialized in Korean art, for the benefit of his wife, Roberta Carroll, in exchange for $20,000 cash, four paintings, and an exclusive option to reconsign the Painting.

230 B.R. at 10. The value of the four paintings that were exchanged is in dispute, but appears to be at least $126,000, as discussed *infra* at 428. The exact timing of that transfer is also in dispute, as discussed *infra* at 428 – 429.

The settlement seeks to resolve the dispute between the estate and Roberta Carroll over ownership of the Painting. It specifically provides that the trustee will release all claims that the Painting is property of the estate, in exchange for which:

(1) Roberta Carroll will pay the estate $10,000;

(2) Roberta Carroll, Joseph P. Carroll, and Joseph P. Carroll, Ltd. will withdraw or release all of their claims against the estate, including any liens pursuant to § 548(c), administrative claims, or proofs of claim, and Roberta Carroll, Joseph P. Carroll, and Joseph P. Carroll, Ltd. will be barred from asserting any claim for recovery from the estate;

(3) Roberta Carroll will dismiss, with prejudice, all related matters pending in the U.S. District Courts.

---

1. Familiarity with the previous decisions in this case is assumed.

2. The court noted that "the historical ownership of the Painting has been purposely or at

least carelessly obscured" and that the court's findings were "provided without the benefit of an adequate documentary trail." 230 B.R. at 7.

## DISCUSSION

### I

■ The Objectors argue that factual issues which were decided by this court in the 1999 Decision are binding upon Roberta Carroll in the instant adversary proceeding and this motion. Specifically, the Objectors rely on the "law of the case" doctrine to argue that Roberta Carroll is bound by the finding in the 1999 Decision that the estate owns the Painting. The law of the case doctrine is not relevant.

■ First, that doctrine pertains to issues of law, rather than issues of fact. *See North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir.), *cert. denied*, 516 U.S. 1184, 116 S.Ct. 1289, 134 L.Ed.2d 233 (1995). Moreover, "[u]nder the doctrine of law of the case, 'a legal decision made at one stage of litigation, *unchallenged in a subsequent appeal when the opportunity to do so existed*, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *Id.* (*quoting Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987)) (emphasis added). Here, the 1999 Decision was appealed, and

the purpose of the District Court remand was to give Roberta Carroll, who was not a party in to the controversy at that time, the opportunity to participate and assert her interest in the Painting.[3] The Objectors argument, if adopted, would have the effect of nullifying the remand order of the District Court.[4]

### II

The analysis of the settlement was undertaken in two evidentiary hearings. The court first considered the maximum fair market value of the Painting, since, at least arguably, a valuation as urged by the Objectors might have successfully challenged the settlement.[5] (March 12, 2003 Decision, Docket # 96). At the conclusion of that phase, however, it was determined the Painting had a fair market value of no more than $125,000. (*Id.*). That valuation justified a second phase to determine whether the maximum value of the Painting was comparable to the consideration to be received by the estate.

Joseph Carroll testified at the second phase that he had extensive experience in and knowledge of the art market. *See* Tr. at 22–24.[6] Mr Carroll explained that al-

---

3. In addition, the law of the case doctrine is only discretionary when applied by a court to its own prior decisions. *North River Ins. Co.*, 63 F.3d at 164–65 ("It is generally accepted that the law of the case doctrine does not limit the power of a court, but 'merely expresses the practice of courts generally to refuse to reopen what has been decided.'" (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988))); *United States v. Uccio*, 940 F.2d 753, 757–58 (2d Cir.1991). Only the "first branch" of the law of the case doctrine, which requires a trial court to follow the rulings of the appellate court after remand, is a mandatory rule. *Uccio*, 940 F.2d at 757–58.

4. Parenthetically, it is noted that the Objectors' law of the case argument might best

have been asserted under the doctrine of collateral estoppel. But that doctrine is inapposite for the same reason, *i.e.*, Dr. Carroll did not have a full and fair opportunity to participate prior to the 1999 Decision. *See Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1285 (2d Cir.1986) (applying New York law); *Resolution Trust Corp. v. Roberti*, 183 B.R. 991, 1001–02 (Bankr.D.Conn.1995) (applying Connecticut law).

5. The Objectors' expert witness testified that the fair market value range of the Painting was $300,000 to $500,000. (March 12, 2003 Decision at 3, Docket # 96).

6. All citations to the transcript ("Tr.") and to exhibits ("Ex.") refer to the transcript of the

though the Painting had a fair market value of $125,000, it would only net a seller approximately $86,000 at auction. That conclusion took into account the market reality that a buyer would reduce a bid to adjust for a sales tax and the buyer's commission, and the gross proceeds to the seller would be reduced by the seller's commission. But even if the Painting had a value to the estate of $125,000, the proposed settlement should still be approved because the corresponding consideration exceeds that amount.

### III

As noted, the settlement provided that in exchange for the Painting, the Carrolls will, *inter alia,* pay $10,000 and withdraw their claims against the estate. Among those potential claims is a § 548(c) lien [7] which the Carrolls would assert for the value that they exchanged for the Painting, *i.e.,* the value of the four transferred paintings plus the cash payment of $20,000. The trustee testified that there were persuasive arguments that the value of the exchanged paintings is approximately between $126,000 and $155,000. *See* Tr. at 114. Accordingly, he valued the minimum total consideration paid by Roberta Carroll in September, 1994 at approximately $146,000. *See* Tr. at 115.

The Objectors argue that the Carroll's claim under § 548(c) should be denied because Roberta Carroll's purchase was not in good faith. Apart from the absence of any credible evidence to support that claim, the trustee testified that his office investigated that claim and found no evidence that the transaction was anything

other than in good faith. *See* Tr. at 111–12. Thus, it is likely that the Carrolls' will have a valid § 548(c) claim if the trustee is successful in litigation.

Accordingly, without accounting for the administrative expenses the Carrolls assert and will release, the costs and risks of litigating the instant adversary proceeding, or the $10,000 settlement payment, the value of the § 548(c) lien alone exceeds the $125,000 value of the Painting, and far exceeds the net value suggested by Mr. Carroll.

Moreover, even if the trustee were ultimately to succeed in his claim that the Painting is property of the estate, the value of that success might be minimized by a lien asserted by Prin Corp. *See* Ex. 1. Prin Corp.'s asserted lien claims to be prior in right to both Roberta Carroll's ownership claim and the estate. The trustee testified that he has seen nothing to indicate that the Prin lien is invalid. *See* Tr. at 116–17. Therefore, the successful prosecution of the instant adversary proceeding might primarily benefit a single secured creditor.

### IV

The analysis of the settlement must necessarily factor in the risk that the trustee might not prevail in this adversary proceeding. The 1999 Decision found that the subject transaction took place on the date of the bankruptcy filing, making it a prepetition transfer. *See* 230 B.R. at 10. However, Mr. Carroll testified at the hearing on the instant motion that the transaction actually occurred one day post-petition. While the exchange agreement (Ex. 2) was dated September 29, 1994, the date

hearing held on September 11, 2003 and exhibits admitted into evidence on that hearing.

7. 11 U.S.C. § 548(c) provides, in relevant part, that "a transferee of [a voidable] transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."

of the bankruptcy filing, Mr. Carroll testified that the exchange was not completed—and the check from Roberta Carroll was not actually received by the debtor—until the debtor faxed the Provenance (Ex. 3). Mr. Carroll testified the provenance was faxed the next day, September 30th, one day post-petition, which is evidenced by the date on the fax header. *See* Tr. at 51–52. While Mr. Carroll's self serving recollection of the timing of the transaction might be suspicious, the trustee had no evidence to challenge his testimony. *See* Tr. at 129–31.

An action based on a postpetition transfer is subject to a two year statute of limitations under § 549(d) and the adversary proceeding was not filed until September 29, 2000, well past the expiration of the statute of limitations. Therefore, if the adversary proceeding is not settled, the potential conclusion that the transaction was post-petition and that the Carrolls would have a compelling defense cannot be ignored.

### V

Finally, it is likely that continued litigation would prove to be very costly. As the trustee testified, the parties have and would likely continue to "litigate to the hilt without any sense of rationality." Tr. at 119. If the very long history of this 1994 case is any guide to the future, it is apparent that the parties will be entangled in numerous disputes over ownership of the Painting, the Prin lien, and whether the transfer to Roberta Carroll was pre or postpetition. That cost has to be added to the equation.

### CONCLUSION

For the foregoing reasons, it is concluded that the proposed settlement is well beyond the lowest point of reasonableness; accordingly,

IT IS ORDERED that the motion for approval of the settlement is granted; and

IT IS FURTHER ORDERED that the 1997 Restraining Order entered in *In re Altman,* Case No. 94–51898 (Docket# 236) and subsequent restraining orders related to the Painting are dissolved and without effect; and

IT IS FURTHER ORDERED that on or between the fifteenth and twentieth day after entry of this Order, the holder of the Painting, Berry Hill Galleries, Inc. and their storage agent, Day & Meyer, Murray & Young, Corp., shall transfer possession and control of the Painting to Roberta Carroll, which transfer shall be facilitated by the trustee.